## SHOTWELL *v.* MOORE.

ERROR TO THE SUPREME COURT OF THE STATE OF OHIO.

No. 1030. Argued January 30, 1889. — Decided March 5, 1889.

A State may make the ownership of property subject to taxation, relate to any day or days or period of the year which it may think proper; and the selection of a particular day on which returns of their property for the purpose of assessment are to be made by taxpayers does not preclude the making of assessments as of other periods of the year.

Section 2737 of the Revised Statutes of Ohio, which requires the taxpayer to return to the assessor, as of the day preceding the second Monday in April in each year, among other things a statement of "the monthly average, amount or value, for the time he held or controlled the same, within the preceding year, of all moneys, credits, or other effects, within that time invested in or converted into, bonds or other securities of the United States or of this State, not taxed, to the extent he may hold or control such bonds or securities on said day preceding the second Monday of April, and any indebtedness created in the purchase of such bonds or securities shall not be deducted from the credits under the fourteenth item of this section" does not tax the citizen for the greenbacks or other United States securities which he may have held at any time during the year, but taxes him upon the money, credits, or other capital which he has had and used, according to the average monthly amount so held, and is not in conflict with § 3701 of the Revised Statutes of the United States exempting the obligations of the United States from taxation under State, municipal or local authority.

THIS was an action brought by the defendant in error as treasurer of Harrison County, Ohio, against the plaintiff in error in the Court of Common Pleas for that county to recover the amount of a tax assessed against him. Judgment in the Common Pleas for the defendant, which was reversed by the Circuit Court, and the judgment of reversal was affirmed by the Supreme Court of the State. This writ of error was sued out to the latter judgment. The case is stated in the opinion.

*Mr. Richard A. Harrison* and *Mr. T. D. Lincoln* for plaintiff in error cited: *Otis* v. *Boston,* 12 Cush. 44; *Ogden* v. *Walker,* 59 Indiana, 460; *Montgomery County* v. *Elston,* 32 Indiana, 27; *Stillwell* v. *Corwin,* 55 Indiana, 433; *McCulloch*

*v. Maryland,* 4 Wheat. 316; *Bank of Commerce* v. *New York,* 2 Black, 620; *Bank Tax Case,* 2 Wall. 200; *Banks* v. *New York,* 7 Wall. 16; *Weston* v. *Charleston,* 2 Pet. 449; *Bank* v. *Supervisors,* 7 Wall. 26; *People* v. *Ryan,* 88 N. Y. 142; *Savary* v. *Georgetown,* 12 Met. (Mass.) 178; *Greene* v. *Mumford,* 5 R. I. 472; *S. C.* 73 Am. Dec. 79; *Kellogg* v. *Ely,* 15 Ohio St. 64; *Exchange Bank of Columbus* v. *Hines,* 3 Ohio St. 1; *Latimer* v. *Morgan,* 6 Ohio St. 279; *Champaign County Bank* v. *Smith,* 7 Ohio St. 42; *Payne* v. *Watterson,* 37 Ohio St. 121.

*Mr. David K. Watson,* Attorney General of Ohio, and *Mr. D. A. Hollingsworth* (with whom was *Mr. John M. Garven* on the brief) for defendant in error cited *Bank of Commerce* v. *New York,* 2 Black, 620; *Banks* v. *New York,* 7 Wall. 16; *Bank* v. *Supervisors,* 7 Wall. 26; *Mitchell* v. *Leavenworth County,* 91 U. S. 206; *Holly Springs Co.* v. *Marshall County,* 52 Mississippi, 281; *Jones* v. *Seward County,* 10 Nebraska, 154; *Dixon County* v. *Halstead,* 23 Nebraska, 697; *Exchange Bank* v. *Hines,* 3 Ohio St. 1; *People* v. *Ryan,* 88 N. Y. 142; *Witherspoon* v. *Duncan,* 4 Wall. 210; *State Railroad Tax Cases,* 92 U. S. 575; *Games* v. *Dunn,* 14 Pet. 322; *Pelton* v. *National Bank,* 101 U. S. 143; *Cummings* v. *National Bank,* 101 U. S. 153; *National Bank* v. *Kimball,* 103 U. S. 732; *Corwall* v. *Todd,* 38 Connecticut, 443; *Olmsted* v. *Barber,* 31 Minnesota, 256; *Poppleton* v. *Yamhill County,* 8 Oregon, 337.

MR. JUSTICE MILLER delivered the opinion of the court.

This writ of error to the Supreme Court of the State of Ohio brings up for review a judgment of that court concerning the taxation by the state authorities imposed upon the plaintiff in error, Stewart B. Shotwell, as the owner of a certain amount of United States legal-tender Treasury notes, commonly called "greenbacks" The case was tried in the Court of Common Pleas of Harrison County, Ohio, by the court, without a jury, by consent of parties; and that court found the following conclusions of fact and law, under the provision of the state statute, upon which all the subsequent proceedings have been based :

"The parties to this cause having waived a jury, the same came on for trial to the court, and the parties with a view of excepting to the decision of the court upon the questions of the law involved in the trial, having requested the court to state in writing the conclusions of fact found separately from the conclusions of law, and the testimony having been heard, the court finds as conclusions of fact as follows:

"That the defendant is and for many years has been a resident of Harrison County, Ohio; that on the Saturday preceding the second Monday of April, in the years 1881, '82, '83, '84, and '85, the defendant had on deposit in bank, at the town of Cadiz, in said county, to his credit as a general depositor, the following sums: In 1881, $30,900; in '82, $26,900; in '83, $29,550; in '84, $18,560; in '85, $4700; that on said Saturday in each of said years he checked out the said balance so standing to his credit and at his request the same was paid to him in United States securities commonly called 'greenbacks;' that on each occasion after counting the money so paid to him he enclosed the same in a package, wrote his name thereon, and returned the same to the officer of the bank, requesting him to place the same in the bank's safe for him, which was done. On no occasion did the defendant carry the money out of the bank building; and in the early part of the next week in each of said years he returned to the bank and demanded his package, which was given him, and he opened the same and delivered it to an officer of the bank asking that the amount should be placed to his credit as a general depositor, which was done; that on each occasion the defendant drew out the balance due him with intent to obtain non-taxable securities, and thereby evade taxation on such balance; but that on each occasion during the time which intervened between the withdrawal and the subsequent deposit as a general depositor he was *bona fide* the absolute owner of the money so withdrawn, and the same was subject to his disposal; that he did not in either of said years list for taxation any part of the money so paid to him nor did he list the monthly average amount or value, for the time he held or controlled the same within the preceding year, of any moneys, credits, or other

effects within that time invested in or converted into the said securities so by him drawn out of bank, and that said monthly average amount so invested by the defendant in such securities within the years, respectively, preceding the drawing out of said moneys was the amount so drawn out at the end of the year; that the auditor of said county placed said several sums upon the duplicate of said county for the year 1885, except for the year '85 he erroneously placed $4949, with fifty per cent added thereto, making $7420, whereas the data before him and by which he should have been controlled authorized only $4700, which with fifty per cent added, would make $7050; and the court further finds that the amount of taxes chargeable upon the aggregate of said several sums, if the same are subject to taxation, is $2317.05, and that said duplicate was delivered to the treasurer of said county for collection.

"And the court being of opinion that, upon the facts so found, the law of this case is with the defendant, it is thereupon considered that the defendant recover of the plaintiff his costs herein expended, taxed at $20.60; to which ruling of the court as to the law of the case and to the judgment so rendered the plaintiff excepts."

The case was taken by appeal to the Circuit Court of the State, where the decision of the Court of Common Pleas was reversed, and judgment rendered for the amount of the tax sued for against Shotwell. This was carried to the Supreme Court of the State, in which the decision of the Circuit Court was affirmed. To review that judgment this writ of error is prosecuted.

The error assigned is that the tax levied and enforced by this judgment was upon notes of the United States, which is forbidden by the Revised Statutes of the United States in the following language:

"SEC. 3701. All stocks, bonds, Treasury notes and other obligations of the United States shall be exempt from taxation by or under state or municipal or local authority."

And that the Supreme Court of Ohio erred in holding that §2737 of the Revised Statutes of the State, passed June 20,

1879, to take effect January 1, 1880, is not in violation of, nor repugnant to, the section above quoted.[1]

It is not controverted by counsel for defendant in error that under the United States law the greenbacks were not subject to taxation, or that if the Ohio statute, when properly construed, authorizes such taxation it is to that extent invalid. But

---

[1] Sections 2736 and 2737 are as follows:

" SEC. 2736. Each person required to list property shall, annually, upon receiving a blank for that purpose from the assessor, or, within ten days thereafter, make out and deliver to the assessor, a statement, verified by his oath, of all the personal property, moneys, credits, investments in bonds, stocks, joint stock companies, annuities, or otherwise, in his possession, or under his control, on the day preceding the second Monday of April of that year, which he is required to list for taxation, either as owner or holder thereof, or as parent, husband, guardian, trustee, executor, administrator, receiver, accounting officer, partner, agent, factor, or otherwise. . . .

" SEC. 2737. Such statement shall truly and distinctly set forth, first, the number of horses, and the value thereof; second, the number of neat cattle, and the value thereof; third, the number of mules and asses, and the value thereof; fourth, the number of sheep, and the value thereof; fifth, the number of hogs, and the value thereof; sixth, the number of pleasure carriages (of whatever kind), and the value thereof; seventh, the total value of all articles of personal property, not included in the preceding or succeeding classes; eighth, the number of watches, and the value thereof; ninth, the number of piano-fortes and organs, and the value thereof; tenth, the average value of the goods and merchandise, which such person is required to list as a merchant; eleventh, the value of the property which such person is required to list as a banker, broker, or stock-jobber; twelfth, the average value of the materials and manufactured articles which such person is required to list as a manufacturer; thirteenth, moneys on hand or on deposit subject to order; fourteenth, the amount of credits as hereinbefore defined; fifteenth, the amount of all moneys invested in bonds, stocks, joint stock companies, annuities, or otherwise; sixteenth, the monthly average amount or value, for the time he held or controlled the same, within the preceding year, of all moneys, credits, or other effects, within that time invested in, or converted into, bonds or other securities of the United States or of this State, not taxed, to the extent he may hold or control such bonds or securities on said day preceding the second Monday of April; and any indebtedness created in the purchase of such bonds or securities shall not be deducted from the credits under the fourteenth item of this section; but the person making such statement may exhibit to the assessor the property covered by the first nine items of this section, and allow the assessor to affix the value thereof, and in such case the oath of the person making the statement shall be in that regard only that he has fully exhibited the property covered by said nine items." [1]

the question presented to us for consideration is whether the tax levied in this case by the authorities of the State was a tax upon the legal-tender notes issued by the government in the hands of Shotwell.

It is conclusively shown by the finding of facts that prior to the day to which the assessment of property for taxation relates by the laws of Ohio, Shotwell had in his bank, on general deposit, subject to his order, at the town of Cadiz, in the county of Harrison, in the previous years of 1881, 1882, 1883, 1884, and 1885, the sums of money on which the taxes here in controversy were assessed; but it is claimed by him that, a day or two previous to that fixed by statute, he had, in each of those years, drawn out the balance of his general deposit account on a check, and, in each case receiving the amount of it in legal-tender notes, had put them into a package, which he enclosed in an envelope, and placed with the bank as a special deposit, writing his name thereon, and requesting the bank to put it in its safe for him, which was done.

Arguing from the proposition that the assessment for an entire year, under the laws of Ohio, must be made on the particular day mentioned in the statute, and that these greenbacks were his property on that day, it is insisted, with great earnestness by counsel, that the amount of the package thus on special deposit on that day could not be taxed by the state authorities. To this general proposition there does not appear to be any valid objection if the thing done had been in the ordinary course of business, and the conversion of his general deposit in the bank into a private package of greenbacks, exempt from taxation, were free from illegal purpose or fraudulent motive. But since it is found as a matter of fact that the whole transaction was made for the purpose of evading taxation on the amount of his general deposit on the day it was exchanged for greenbacks, and that there was no purpose of permanently changing the amount of the deposit in the bank subject to his order, and, as such, liable to taxation, it is argued by counsel that it was a fraud upon the revenue laws of the State of Ohio.

For all of the years mentioned the same process was gone

through with, and in every instance, within a week after the assessment, the plaintiff in error took the same greenbacks which he had placed on special deposit and immediately restored them to the bank as a general deposit, subject to his order; in other words, he remanded the amount to the condition in which it would have been liable to taxation if the period of assessment were not limited to the particular day mentioned in the statute.

It does not need the finding of the court below as a fact to show that this was an evasion, and a discreditable one, of the taxing laws of the State, if it could be made successful. It is, therefore, urged that on this ground alone — the illegal purpose for which the transactions were made in the bank — the court should hold the plaintiff in error liable to taxation for the amount thus converted. Several decisions on this subject by state courts, holding this view, are cited in the brief of counsel. They are directly in point, and relate to attempts of precisely the same character to effect a similar evasion of taxation on property otherwise liable thereto. Among these are. *Holly Springs Savings and Ins. Co.* v. *Marshall County*, 52 Mississippi, 281; *Jones* v. *Seward County*, 10 Nebraska, 154; and *Poppleton* v. *Yamhill County*, 8 Oregon, 337. From the latter case we quote the following language:

"If a taxpayer, having a large amount of notes and mortgages, in order to escape the payment of taxes on the same, borrows a sum of money of a person residing out of the county, and deposits with his creditor such notes and mortgages, for the purpose of avoiding the payment of taxes on the same, such notes are taxable in the county where such taxpayer resides; and such deposit or transfer is a fraud on the revenues of the county."

And this court in *Mitchell* v. *Commissioners of Leavenworth County*, 91 U. S. 206, denounces conduct precisely similar to that of the plaintiff in error in this case, in the following language:

"United States notes are exempt from taxation by or under state or municipal authority; but a court of equity will not knowingly use its extraordinary powers to promote any such

scheme as this plaintiff devised to escape his proportionate share of the burdens of taxation. His remedy, if he has any, is in a court of law."

The circumstances of that case are precisely like those in the case before us. The taxpayer converted, in the same manner as Shotwell did, about nineteen thousand dollars in current funds on general deposit in his bank into the same value in greenbacks, and placed them in a package which he put in the vault of the bank for safekeeping. This was on February 28. On March 3, following, he withdrew this package, and deposited the notes to his general credit. This was done for the sole purpose of escaping taxation upon his money on deposit in the bank. That case only differs from the one at bar in the fact that the revenue officer proceeded to collect the tax assessed by distress, which compelled the defendant to resort to a court of equity to enjoin the proceedings; but this court held that the transaction was so inequitable that it would not be sustained in a court of chancery.

Instead of pursuing that method of collecting the tax in the present case, as the treasurer of the county had a right to do under the laws of Ohio, he brought an action at law against the taxpayer. It is now asserted that although the opinion of this court in *Mitchell* v. *Commissioners of Leavenworth County* holds that the party assessed can have no relief in a court of equity, still he might have, when sued at law, or in any manner where the issue could be heard in a court of law as distinguished from a court of equity.

All these decisions show that the courts look upon this transaction as indefensible, and consider it an improper evasion of the duty of the citizen to pay his share of the taxes necessary to support the government which is justly due on his property.

Waiving the question whether these equitable considerations would constitute a defence in an action at law to collect the tax in suit, we proceed to inquire whether the statute of Ohio made all assessments for taxes relate by an iron rule to the day preceding the second Monday in April, and to property possessed on that particular day, and that only. Is such a construction of the law of the State of Ohio a proper one?

It is to be conceded that a State may make the ownership of property subject to taxation relate to any day, or days, or period of the year, it may think proper, and that the selection of a particular day on which returns are to be made by taxpayers of their property for the purposes of assessment does not necessarily preclude the making of assessments as of other periods of the year. The State of Ohio, like many and perhaps most of the other States, collects from the business and property subject to taxation for the year preceding the specified date, the elements of an assessment of a tax to be paid by the taxpayer for the year succeeding that date, and it has in several instances recognized the fact that an assessment which assumed that all property should only be assessed to those who were the owners of it on the precise date named was not a just apportionment. Assessments of land are made once in ten years, with such additions every year as the value of improvements justifies. So in the case of merchants engaged in buying and selling goods, the stock on hand on that day might be either the largest or the smallest of any period during the year preceding. If it were either, a tax intended to be governed by the amount of property owned or held by them during such year would be evidently unjust either to them or to the State.

To avoid this evil the statute in Ohio provides for the ascertainment of the monthly average amount or value of the property or goods in which such parties were dealing, and for the assessment for taxation on that basis. Many kinds of business must be of this character.

The legislature, perceiving the facility with which negotiable securities and other rights and credits which were liable to taxation might be exchanged for greenbacks at the time the assessment for taxation was made, and after the assessment was over replaced in the form in which they had been, applied this principle, by special provision of the statute, to that form of property. In this they showed a wise forecast. So far as we can see, the statute which does this does not tax the citizen for the greenbacks which he may have held at any time during the year, but taxes him upon the money, credits, or other

capital which he has had and used, according to the average monthly amount he has so held.

Such we understand to be the purpose and effect of the section complained of by counsel, to wit, subdivision sixteen of § 2737 of the Revised Statutes of Ohio. We do not see any objection to that State endeavoring to arrive at the average monthly amount or value of the moneys, credits, or other effects of the citizen subject to taxation within the preceding year, and ascertaining in a similar manner the average amount of his securities, either state or national, for the same period, not subject to taxation, in order to fix a basis for assessment. It is certainly a much more equitable mode of determining how much of his property for the year preceding the assessment is liable to taxation, and how much is exempt, and more nearly effects the purpose of the Federal statute as well as that of the State of Ohio, to exempt the one and to tax the other, than a rule which assumes that the condition of the means and property of the taxpayer at a certain hour of a particular day in the year shall constitute the basis of his taxation for the entire year.

It needs no other evidence that the rule adopted by the State of Ohio is the better one than the case before us, by which a possessor of large means subject to taxation during every day in the year but one may escape the payment of any tax on all of his property if the trick resorted to in the present case be successful; and the cases which we have cited from the other state courts, as well as the opinion referred to of this court, clearly show the wisdom of the legislature of Ohio in protecting itself against the effects of the rule here contended for.

Section 2737 of the Ohio statutes, which prescribes the character of the statement to be made by persons holding moneys, credits, or investments, such as are described, and which are subject to taxation, declares that such statement shall truly and distinctly set forth, among other things, "moneys on hand or on deposit subject to order," and "the amount of credits as hereinbefore defined." Subdivision 16 requires a statement of "the monthly average amount or value,

for the time he held or controlled the same, within the preceding year, of all moneys, credits, or other effects within that time invested in, or converted into, bonds or other securities of the United States or of this State, not taxed, to the extent he may hold or control such bonds or securities, on said day preceding the second Monday of April; and any indebtedness created in the purchase of such bonds or securities shall not be deducted from the credits under the fourteenth item of this section."

Of the right of the State of Ohio to make this provision we have no doubt. Its purpose is not to enable that State to tax the securities of the United States, but to permit it to tax other investments, moneys on hand and on deposit subject to order, while it combines in the same exemption the securities of the general government and those of the State. We know of no principle which forbids that State from taking the whole period of a business year already past as the best means of ascertaining how much the taxpayer shall be required to pay on property which is admitted to be taxable, and how much he shall deduct for the non-taxable securities of the State and of the United States.

As this was the method under which the plaintiff in error in this case was taxed, and as he was charged with no more than he was liable to pay under a wise and equitable law, we do not see any error in the judgment of the Supreme Court of Ohio, and it is accordingly

*Affirmed.*

MR. JUSTICE BRADLEY: I dissent from the judgment. I do not defend Mr. Shotwell; but it is a question of law, and the law of Ohio seems to me repugnant to the act of Congress which exempts the securities of the United States from taxation.

The law is this: The property that a man has on the second Monday in April is the amount of property which he is to return for taxation that year. Now, if a man chooses to buy United States securities one month or one day before that time, he has a perfect right to do it, and as the act of Con-

gress declares that United States securities shall not be taxed, the State has no right to tax him for them. But the legislature of the State of Ohio undertook to get around that law in this way; they say that a man shall be exempted from taxation for United States securities owned by him on the second Monday in April, only in proportion to the time that he has held them, so that if he has held them only one day he would be exempted only one 365th part of the amount; whilst, if the man of whom the taxpayer bought them, held them 364 days, he would get no exemption at all; he would be taxable for the consideration which he received for the securities and which he held on the second Monday in April. Therefore, in Ohio United States securities are only exempted from taxation in a limited manner, that is, in proportion to the time they have been held. All other property is treated differently. If anything is unconstitutional, it seems to me that this is.