Trust Co. v. Speed.

MEMPHIS TRUST COMPANY *v.* R. A. SPEED, Clerk.

*(Jackson.* April Term, 1905.)

1. **COLLATERAL INHERITANCE AND SUCCESSION TAX.**
Property taken in kind by a widow in payment of a bequest of
one-half of the residue of the estate is not subject to, when.
Where a nonresident devised and bequeathed one half of the res-
idue of his estate to his wife, and died the owner of personal
property in this State, which was a part of the residue of his
estate, a portion of which she elected to take at a fair valuation
as compared with the balance of the residuary estate wherever
situated, and the executor transferred it to her in kind, in pay-
ment and satisfaction of her one-half interest in the residuary
estate, such property so taken by the widow is not subject to
the collateral inheritance and succession tax.

Code cited and construed: Secs. 724, 735.

Acts cited and construed: 1893, ch. 174, secs. 1, 10; 1893, ch. 89,
sec. 7.

Code cited and construed: Secs. 724, 735 (S.).

2. **SAME.** Clear or net value of share of estate after deduction of
debts, etc., subject to.
Debts owed by the decedent must be deducted from the aggregate
value of the estate before it can be ascertained what amount is
subject to the collateral inheritance· and succession tax; for
the tax shall be levied on the clear value of the estate so pass-
ing, and it is the net value of the share of the estate inherited
by or willed to the collateral kindred that is subject to the tax.
*(Post, p.* 691.)

Acts cited and construed: 1893, ch. 89, sec. 7; 1893, ch. 174, sec.
1.

Cases cited and approved: Callahan v. Woodbridge, 171 Mass.,
595; In re King, 172 N. Y., 616.

Trust Co. v. Speed.

3. **SAME.** Same. But Tennessee debts of a nonresident testator will not be deducted from Tennessee assets subject to, when. But Tennessee debts paid by the executor before the institution of tax proceedings and not shown to have been paid out of the Tennessee assets cannot be deducted from the Tennessee assets passing to collateral kindred under the will of a nonresident and subject to the collateral inheritance and succession tax. (*Post,* pp. 691, 692.)

FROM SHELBY.

Appeal from the Circuit Court of Shelby County. —J. P. YOUNG, Judge.

S. J. SHEPHERD, for Trust Company.

ATTORNEY-GENERAL CATES, W. P. ELDRIDGE, and G. P. SMITH, for Speed.

MR. JUSTICE M'ALISTER delivered the opinion of the Court.

The question presented for determination upon this record is whether $20,000 of stock in the Bank of Commerce is subject to a collateral inheritance tax. It appears that Bem Price died domiciled in the State of Mississippi, and left an estate in Tennessee appraised at the value of $34,000. The deceased left a last will and testament, of which the Memphis Trust Company was duly

appointed executor by the chancery court of Mississippi, and ancillary letters testamentary have been granted to it by the probate court of Shelby county, Tennessee. It is averred that such ancillary letters testamentary were only granted to said trust company for the purpose of enabling it to collect and secure possession of certain assets, and also to enable it to pay off and discharge certain debts which were due and owing in the State of Tennessee. The will provides as follows: "I give and bequeath and devise to my beloved wife, Mary D. Price, my home place consisting of 105 acres, more or less with all improvements thereon situated in the town of Oxford, Mississippi, and on the west side of North street in said town. I also give to my wife all of the household furniture in said house, my carriage and horses and such of my milk cows as she may desire for her private use. I also give and devise to my wife, Mary D. Price, the tract of land containing 40 acres more or less and situated on the north side of the town cemetery in Oxford, Mississippi. I further give, bequeath and devise to my wife, Mary D. Price, one half of all the residue of my estate whether real or personal or mixed and wherever located and I request and desire her to entrust to the Memphis Trust Company that portion of my estate given to her except," etc.

The trust company, in its answer, states that in the division of the estate of the late Bem Price his stock in the National Bank of Commerce embraced in the appraisement was selected by and set apart to Mrs. Mary

D. Price, widow of testator, as a part and portion of one-half of his estate to which she was entitled under the terms of his will.    Defendant further avers that Mary D. Price had the right to select and insist upon the shares of stock in the National Bank of Commerce as a part and portion of her one-half interest in the estate of her deceased husband, and that this respondent, as executor, had no right to object to her selection of said stock, provided only it was taken at a fair valuation, which was actually done.

Respondent therefore avers that, inasmuch as the shares of stock in the National Bank of Commerce were never held in any way by the collateral relatives of testator, it is not responsible or liable for any collateral inheritance tax thereon.    Respondent further stated that said stock in the National Bank of Commerce was set apart for said Mary D. Price in kind, and so transferred to her.

Respondent further avers that at the time of the death of Bem Price, he was indebted to the National Bank of Commerce, which is a Tennessee corporation, in the sum of $7,539, and also owed to said National Bank of Commerce an additional sum of $5,000, thus making a total indebtedness of said Bem Price in the State of Tennessee of the sum of $12,539.

Respondent further avers that it is its duty to set off and charge against the value of stock in the Memphis Trust Company the indebtedness of said Bem Price due to Tennessee creditors, inasmuch as this stock consti-

tutes a fund peculiarly and especially liable therefor. Respondent therefore avers that after the allotment to Mrs. Mary D. Price, widow of testator, of the stock in the National Bank of Commerce, which she selected in kind, as she had a right to do, and after charging against the stock in the Memphis Trust Company the amount of the indebtedness due to the estate of Bem Price, no personal assets or assets of any kind remain in the State of Tennessee subject to a collateral inheritance tax or other tax of any kind. It appears from the record that Gilmer P. Smith was appointed by R. A. Speed, county court clerk, to appraise the estate of Bem Price, deceased, situated in Shelby county, Tennessee, which was or might be liable to taxation under the collateral inheritance tax law. The appraiser found that at the time of testator's death he was the owner of one hundred shares of stock, par value, of the Memphis Trust Company, and also owned one hundred shares of stock in the National Bank of Commerce, also at par value. The value of all this stock was assessed by the appraiser at $34,000. The appraiser was asked the following question: "Question 4. In answer to question 2 you say that the Tennessee property of this estate amounted to $34,000, and in answer to question 3 you say you only appraised for taxation $17,000 or rather you only found $17,000 subject to taxation. Explain why you only found this amount subject to taxation, and not the whole $34,000. Ans. The $34,000 referred to in question 2 was the total valuation

of the Tennessee property belonging to this estate, and
by the terms of the will of Bem Price one-half of this
property went to his wife, namely $17,000. Under the
collateral inheritance tax law any property left to or in-
herited by the wife of the deceased from the deceased's
estate is not subject to collateral inheritance tax. Now,
by the will of Bem Price, one-half his property went to
his wife, and he did not designate any particular parts
of the property to go to her, and as he gave no election
of the kind she was to have, I assume she, of course, took
one-half of this $34,000 worth in Tennessee property;
consequently only the half left to collaterals was subject
to taxation, and I therefore only appraised half for tax-
ation, and so reported."

The circuit judge, who heard the cause without the in-
tervention of a jury, found that Bem Price, resident of
the State of Mississippi, died, leaving an estate in Ten-
nessee, which, from report of appraiser, appeared to be of
value of $34,000, "and it appearing that under the will
of said Bem Price one-half of his entire estate (exclusive
of specific bequests and legacies to his wife) was devised
and bequeathed to his wife, Mary D. Price, and the
other one-half to said collateral relatives and strangers
in blood mentioned in said will, it is therefore adjudged
by the court that said estate pay a collateral inheritance
tax of five per cent on one-half of the valuation of said
estate, or $17,000, amounting to the sum of $850, togeth-
er with fee of $127.50 to W. B. Eldridge, attorney for
R. A. Speed, together with the costs of this cause." The
court declined to allow exemption of $12,739 on the

debts due by the estate of Bem Price in the State of Tennessee, though the court recites the fact that such debts existed and were Tennessee debts.  The court further found that the setting apart to Mary D. Price, wife of testator, of the stock in the Bank of Commerce, did not exempt said stock, or any part thereof, from liability for the collateral inheritance tax.  The Memphis Trust Company, as executor, appealed from this decree, and has assigned the following errors:  (1)  The court erred in estimating the stock in the National Bank of Commerce which had been set apart to Mrs. Mary D. Price, widow of testator, as a basis upon which collateral inheritance tax, or any part thereof, could be assessed. (2)  The court erred in refusing to consider the indebtedness of $12,539, due by Bem Price to Tennessee creditors in estimating the collateral  inheritance tax due on his estate or any part thereof.

In support of the first assignment of error counsel for the Memphis Trust Company propounds the proposition that there can be no claim for collateral inheritance tax upon the stock in the Bank of Commerce, because that has been selected by, and has become the property of, the widow, and under the provision of the collateral inheritance tax law of 1893 property inherited by or bequeathed to the widow is exempt.

It is undoubtedly true that under the Act of 1893 property passing to the widow from the testator is not subject to collateral inheritance tax, for the plain reason that the widow is exempt from its provisions.  But the

contention is that the widow had no right to elect under
the will and its codicils to take any particular portion
of decedent's property after the payment of specific leg-
acies and devises. As already seen, testator made spe-
cific bequests to his wife, and then a general bequest
of one-half of the residuary property. The argument
is that, if the testator had intended that his widow
should have the right to make selection of one-half of the
remainder of his property, he would have so directed
in his will. This intention, it is claimed, is excluded
by the specific bequests and the general bequest of one-
half of the remainder of the estate. It is further in-
sisted that the fact that the executor permitted the
widow to take the National Bank of Commerce stock as
her share of the residuary estate did not bind the estate,
nor relieve the executor of the payment of collateral in-
heritance tax on this stock. The argument seems to be
based upon the following language in the Act of 1893,
namely: "And all owners of such estates and all execu-
tors and administrators, and their sureties, shall only
be discharged from liability for the amount of such taxes
and duty, the settlement of which they may be charged
with by having paid the same over for the use of the State
as hereinafter directed.." Shannon's Code, section 724;
section 1, c. 174, p. 347, Acts 1893. Counsel then cites
section 10, c. 174, p. 350, Act 1893, which provides as fol-
lows: "Whenever any foreign executor or administra-
tor or trustee shall assign or transfer any stock, or loans
in this State standing in the name of decedent, such tax

shall be paid, on transfer thereof, to the clerk of the county court where such transfer is made; otherwise the corporation or person permitting such transfer shall become liable to pay such tax." Shannon's Code, section 735. It is therefore the contention of the State that, as Bem Price left property in the State of Tennessee, consisting of one hundred shares of stock in the National Bank of Commerce, and one hundred shares of stock in the Memphis Trust Company, it was the duty of the executor, when the National Bank of Commerce stock was turned over to Mrs. Mary D. Price, widow, to pay to the county court clerk collateral inheritance tax based upon the value of one-half of said stock, as under the will only one-half of said stock could go to the widow, and this property was clearly divisible in kind. It is further argued that the widow could make no selection of property she wished to take, nor could the executor assent to allotment of such specific property so chosen. Act 1893, p. 347, c. 174, section 1, and Act 1893, p. 146, c. 89, section 7, provides as follows: "All estates—real, personal and mixed, of every kind whatsoever, situated within this State, whether the person or persons dying seized thereof be domiciled within or out of this State, passing from any person who may die seized or possessed of such estates, either by will or under the intestate laws of this State, or any part of such estate or estates or interest therein transferred by deed, grant, bargain, gift or sale, made in contemplation of death, or intended to take effect in possession or enjoyment after the death of the

grantor or bargainor to any person or persons, or to bodies corporate or politic, in trust or otherwise, other than to or for the use of the father, mother, brother, sister, the wife or widow of a son, or husband of a daughter, or any child or children adopted as such in conformity with the laws of the State of Tennessee, husband, wife, children, and lineal descendants born in lawful wedlock of the person dying seized and possessed thereof, shall be subject to a duty or tax of five dollars on every hundred dollars of the clear value of such estate or estates so passing, and at and after the same rate for any less amount, to be paid to the use of the State," etc. So it is very clear, and counsel concede the proposition, that no property passing to the widow under the provisions of this act is subject to the payment of collateral inheritance tax; but the main contention of counsel for the State is that under the residuary clause of this will the wife has no right to make a selection of specific property left in the residuary estate. This question arose in the *Matter of James,* 144 N. Y., 6, 38 N. E., 961. In that case the question arose on a construction of the collateral inheritance tax law of New York, which is substantially similar to the Tennessee Act of 1893. The facts were that at the time of his death in Africa testator was a citizen of the Kingdom of Great Britain, and was domiciled there. By his last will, which he had made at the place of his domicile, he disposed of a very large estate. He left property in Great Britain, which was valued at $447,630, and property in this country, which was val-

ued at $2,303,472.53. He gave legacies to collateral rel·
atives and charities, which in the aggregate amounted
to $236,810. The residue of his estate was given to his
executors, upon trust for the benefit of his two brothers.
The charitable bequests were to foreign corporations,
and persons to whom legacies were given were residents
of Great Britain, with the exception of two, who resided
in this country. He left no debts here. His will was
proven in England in June, 1890, and afterwards, as a
result of an action brought in the courts of this State
(New York) by the executors, was established here, and
letters testamentary were issued thereon to John Arthur
Jones, one of the executors named, and also a resident of
Great Britain. He applied to the surrogate of the coun-
ty of New York for the appointment of an appraiser for
the purpose of appraisement under the laws of this State
imposing a tax upon gifts, legacies, and collateral inher-
itances. It appeared that by the will the legacies were
to be paid within three months of testator's death free
of duty; that a portion of the amount given as legacies
had already been paid in Great Britain out of the estate
there, together with the duties imposed on legacies by
the law of that country, and that the property in this
country consisted, among other things, in stocks and
bonds of corporations of this and other States, which se-
curities were deposited in this State at the time of tes-
tator's death.

On these facts the court of appeals of New York, in
the midst of its opinion, said: "In the present case the

property which testator died possessed of in Great Britain is largely in excess of the amount given by him in legacies. Some portion of that has already been paid from the English estate, and the executor has declared his determination of appropriating that part of testator's property to their payment, so that the American estate shall constitute the residuary estate disposed of by the will in favor of the testator's brothers. This he may rightly do, and thus save the estate from the payment of the succession taxes imposed by our laws. The fact of such an appropriation will, of course, appear upon his accounting. If the executor determines to pay the legacies from the English estate, the American estate is thereby freed from the burden of the special taxes, the imposition of which depends upon the fact of a succession by the legatee to some property which is within the State. If the American estate is appropriated to persons who are within the exempted degrees of relationship to testator, the right to claim the tax from executor is gone. It does not lie with the officers of the State to say in such a case which part of testator's property shall be appropriated to the payment of the legacies. The law is not arbitrary in its application. It is simply absolute in its requirements, when the precise case arises which it was framed to meet; and where, as here, the case is not presented of an appropriation of any part of the American estate in payment of legacies to foreign legatees, this special tax law can not and should not apply."

Trust Co. v. Speed.

It will be seen from the excerpt of the opinion that the New York case bears a striking analogy in some of its essential features to the case now under consideration. The reasoning of the court commends itself to our judgment, and without further elaboration we hold that the executor of the estate of Bem Price had a right, upon the election of the widow, to transfer to her the stock in the National Bank of Commerce in payment of her one-half interest in the residuary estate; provided, of course, it was taken at a fair valuation as compared with the balance of the residuary estate wherever situated. The stock in the Memphis Trust Company, amounting to $14,000, which, under the will, goes to collateral kindred and strangers in blood, is clearly subject to the tax.

The second assignment is that the court should have allowed, as against any collateral tax imposed on the stock in the Memphis Trust Company, and valued by the appraiser at $14,000, the indebtedness of $12,539 due creditors in the State of Tennessee. It is well to understand in the first place whether there are any debts outstanding in this State which are due from the estate of Bem Price, and the character of that indebtedness. We find this matter explained in the deposition of Mr. John H. Watkins, vice president of the Memphis Trust Company, as follows: "Q. State what debts, if any, were due by the estate of Bem Price to creditors in the State of Tennessee. Ans. At the time of the death of Bem Price he was indebted to the National Bank of

Commerce in the sum of about $7,539. He also owed the National Bank of Commerce the sum of $5,000. This last item was two-thirds of a debt of $7,500 due by the firm of Price & Price, of which he was a member, and in which he had an interest of two-thirds, being responsible, of course, for two-thirds of its debts. These debts have been paid off, and the estate of Bem Price now owes no debts to creditors in Tennessee." Again, the witness was asked: "Did the general estate of Price pay the firm debts, or were they paid out of his individual estate? Ans. The firm of Price & Price was solvent, and it paid the indebtedness of $7,500 to the Bank of Commerce, of which amount $5,000 was owed by Bem Price. The individual estate of Bem Price did not pay this $7,500."

Again, the witness was asked: "What relationship did this Tennessee debt of $12,539.00 bear to his entire indebtedness? Ans. About fifty per cent. Q. For this debt did the Bank of Commerce have any security? If so, what was it? Was it exhausted before other property was used in paying these two debts? Ans. The indebtedness of Price & Price to the Bank of Commerce, amounting to $7,500, was secured to the Bank of Commerce by eighty shares of stock in the Bank of Oxford, belonging to Bem Price, which was deposited as collateral. None of this security was used or exhausted in paying the debt."

Again, this witness was asked: "What per cent or part of this whole estate were the Bank of Commerce

stock and the Memphis Trust Company stock? Ans.
Twelve and one-half per cent., or one-eighth."

It may be conceded as sound law that debts must be
deducted from the aggregate value of the estate before
it can be ascertained what amount is subject to the in-
heritance tax. *Callahan* v. *Woodbridge,* 171 Mass., 595,
51 N. E., 176; *Matter of King,* 172 N. Y., 616, 64 N. E.,
1122. The Tennessee Act of 1893, already quoted supra,
provides that the tax shall be levied on the clear value
of the estate so passing.

It is the net value of the share of the estate inherited
by or devised to the collateral kindred that is subject to
the tax. In the present case one of the debts due Tennes-
see creditors was an individual debt of the testator, and
the other an indebtedness of a partnership wherein he
owned a two-thirds interest. Both debts have been paid,
and were paid before the institution of the tax proceed-
ings herein. It does not appear that the individual debt
was discharged with Tennessee assets, and we have no
concern with the partnership debt, since that was dis-
charged with firm assets. We infer that the individual
indebtedness of Bem Price to the National Bank of Com-
merce for $7,539 was paid with Mississippi assets, since
the appraiser found that the entire value of the estate
in Tennessee was $34,000, and that amount still remain-
ed intact for distribution when the appraisement was
made.

In addition to this, if the executor sought to deduct
debts due Tennessee creditors from the shares of the es-

tate passing to the collateral kindred, it was incumbent on it to show they were discharged with Tennessee assets. This fact does not appear in the record. We concur with the circuit judge in disallowing these debts as credits on the stock of the Memphis Trust Company appraised for taxation at $14,000. We nonconcur with the circuit judge in his holding that the setting apart of the stock in the Bank of Commerce to the widow did not exempt said stock, or any part thereof, from liability for the collateral inheritance tax. We hold that the part of said stock so set apart to the widow is exempt from said tax. We think the fee allowed the attorney for the county court clerk was altogether proper and reasonable.

For the reasons stated herein, the judgment of the circuit court is affirmed.