UNTERMYER et al. v. STATE TAX COMMISSION et al.

No. 6359.   Decided October 9, 1942.   (129 P. 2d 881.)

216

See 61 C. J. Taxation, sec. 2434; 12 Am. Jur., 239.

For opinion of the United States Supreme Court reversing judgment in 116 P. 2d 926, see 62 S. Ct. 1104, 316 U. S. 645, 86 L. Ed. . . . .

*Grover A. Giles*, Atty. Gen., *Calvin L. Rampton*, Deputy Atty. Gen., and *Grant A. Brown, J. Lambert Gibson*, and *Garfield O. Anderson*, all of Salt Lake City, for appellant.

*Critchlow & Critchlow, George A. Critchlow* and *Bert A. Lewis*, all of Salt Lake City, for respondents.

LARSON, Justice.

This cause was previously before this court, *Aldrich* v. *State Tax Comm.*, 102 Utah 226, 116 P. 2d 923, where the

facts are fully stated. Under compulsion of the decision of the United States Supreme Court in *First National Bank* v. *Maine,* 284 U. S. 312, 52 S. Ct. 174, 76 L. Ed. 313, 77 A. L. R. 1401, this court held that the tax infringed the due process clause of the Federal Constitution, and affirmed judgment against the tax commission. On certiorari the United States Supreme Court overruled the First National Bank v. Maine case, reversed the judgment herein and remanded the cause to this court for further proceedings not inconsistent therewith. *State Tax Comm.* v. *Aldrich,* 316 U. S. 174, 62 S. Ct. 1008, 86 L. Ed. .... We are now called upon to make an examination and formal ruling on the questions as to whether, under the statute and the Constitution of Utah, the commission is entitled to exact the tax. The following questions call for answer.

1. Is the devolution here involved taxable within the terms of the Utah Inheritance Tax Law? Or more specifically stated: Was the property devolved, to wit, the property represented by the shares of Union Pacific stock, "within the jurisdiction of this state" at the time of decedent's death?

2. Does the tax on this devolution violate the due process clause, Section 7 of Article I of the state constitution?

3. Does the tax on the devolution violate the uniformity clause, Section 24 of Article I of the state constitution?

We will consider them in order.

1. Untermyers contend: (a) That the devolution is not within the terms of the Utah Inheritance Tax Law, because the certificates representing the shares of Union Pacific stock which passed by the devolution were not physically within the State of Utah; (b) That if it be held that the phrase of the statute, "within the jurisdiction of this state" be held to have been intended to include such property as this, then the statute was amended by implication to exclude it by the enactment in 1927 of the Uniform Stock Transfer Law. Title 18, Chapter 3, R. S. U. 1933.

That the holder of stock in a domestic corporation has a species of intangible property within the state of incorporation which is subject to taxation by such state is well settled by the authorities. Where a state statute purports to exact a tax in respect to devolution of all property within the state, it is generally held that the tax is payable on stock in a domestic corporation held without the state by a non-resident even in the absence of any element other than the domestic character of the corporation to give the property a situs within the state. *McDougald* v. *Lilienthal,* 174 Cal. 698, 164 P. 387, L. R. A. 1917F, 267; *Morrow* v. *Gould,* 145 Iowa 1, 123 N. W. 743, 25 L. R. A., N. S., 384; *Greves* v. *Shaw,* 173 Mass. 205, 53 N. E. 372. The Massachusetts court stated in the case last cited:

"There can be no doubt that stock in corporations organized under the laws of this commonwealth * * * is property within the jurisdiction of the commonwealth, within the meaning of this statute [Cases cited] Such a corporation, being in a sense a citizen of this state, and having an abiding place here akin to the domicile of a natural person, is subject to the jurisdiction of the commonwealth, and is in fact within the commonwealth. The stockholders are the proprietors of the corporation, which is itself the proprietor of the property owned and used for the ultimate benefit of the stockholders. While the corporation has a full and complete legal title to the corporate property, its ownership is in a sense fiduciary; for, on winding up its affairs, the surplus after the payment of debts must be divided among the stockholders. * * * That the certificates in the present case were in the state of New York at the time of the death of the testatrix is immaterial."

*State ex rel. Graff* v. *Probate Court,* 128 Minn. 371, 150 N. W. 1094, L. R. A. 1916A, 901; *In re Bronson's Estate,* 150 N. Y. 1, 44 N. E. 707, 55 Am. St. Rep. 632, 34 L. R. A. 238; *Nickel* v. *State,* 43 Nev. 12, 45, 177 P. 409, 185 P. 565, affirmed 256 U. S. 222, 41 S. Ct. 467, 65 L. Ed. 900; *Memphis Trust Co.* v. *Speed,* 114 Tenn. 677, 88 S. W. 321. The principle recognized by this court in *Larson* v. *McMiller,* 56 Utah 84, 189 P. 579. See, also, *Maxwell* v. *Bugbee,* 250 U. S. 525, 40 S. Ct. 2, 63 L. Ed. 1124; *Frick* v. *Pennsylvania,* 268

U. S. 473, 45 S. Ct. 603, 69 L. Ed. 1058, 42 A. L. R. 316; *Rhode Island Hospital Trust Co.* v. *Doughton,* 270 U. S. 69, 46 S. Ct. 256, 258, 70 L. Ed. 475, 43 A. L. R. 1374, where the court said:

"The tax here is not upon property, but upon the right of succession to property; but the principle that the subject to be taxed must be within the jurisdiction of the state applies as well in the case of a transfer tax as in that of a property tax. A state has no power to tax the devolution of the property of a nonresident, unless it has jurisdiction of the property devolved or transferred. In the matter of intangibles, like choses in action, shares of stock, and bonds, the situs of which is with the owner, a transfer tax, of course, may be properly levied by the state in which he resides. So, too, it is well established that the state in which a corporation is organized may provide, in creating it, for the taxation in that state of all shares, whether owned by residents or nonresidents. [Cases cited]"

And again at page 83 of 270 U. S., page 259 of 46 S. Ct., 70 L. Ed. 475, 43 A. L. R. 1374, the court said, referring to jurisdiction for the purpose of taxing the devolution of the shares of stock:

"That is determined by the laws of Rhode Island where the decedent owner lived or by those of New Jersey, because the shares have a situs in the state of incorporation."

See, also, *Blackstone* v. *Miller,* 188 U. S. 189, 23 S. Ct. 277, 47 L. Ed. 439; *Baker* v. *Baker, Eccles & Company,* 242 U. S. 394, 37 S. Ct. 152, 61 L. Ed. 386; *Corry* v. *Baltimore,* 196 U. S. 466, 25 S. Ct. 297, 49 L. Ed. 556; *Graves* v. *Schmidlapp,* 315 U. S. 657, 62 S. Ct. 870, 86 L. Ed. ... ; *State of Wisconsin* v. *J. C. Penney Co.,* 311 U. S. 435, 61 S. Ct. 246, 85 L. Ed. 267, 130 A. L. R. 1229. That this stock had a taxable interest in Utah was recognized by the Supreme Court of the United States in its decision in the instant case, supra. See, also, annotation in 42 A. L. R. 365.

The provisions of our Inheritance Tax Law pertinent to this problem are found in Sections 80-12-2 and 80-12-3, R. S. U. 1933, as amended. These provisions have existed in

our Inheritance Tax Law from the time it was first enacted. The material portions of these sections read as follows:

80-12-2: "A tax equal to the sum of the following percentages of the market value of the net estate shall be imposed upon the transfer of the net estate of every decedent, whether a resident or nonresident of this state: * * *."

80-12-3: "The value of the gross estate of a decedent shall be determined by including the value at the time of his death of all property, real or personal, within the jurisdiction of this state, and any interest therein, whether tangible or intangible, which shall pass to any person, in trust or otherwise, by testamentary dispositon or by law of inheritance or succession of this or any other state or country, or by deed, grant, bargain, sale or gift made in contemplation of the death of the grantor, vendor or donor, or intended to take effect in possession or enjoyment at or after his death."

It is thus seen that the statute contemplates the taxation of every conceivable type of interest within the jurisdiction of the State of Utah which is transferred as a result of the death of the owner.

It follows that the devolution here involved is subject to tax unless the enactment of the Uniform Stock Transfer Law, Chapter 55, Laws of Utah 1927, p. 82, in 1927, by necessary implication modified the Inheritance Tax Law so as to exclude such stocks from the tax. In this connection it is interesting to note that in the Revision of 1933, the legislature while readopting the Uniform Stock Transfer Law Title 18, Chapter 3, R. S. U. 1933, also re-enacted without change the Inheritance Tax Statute Title 80, Chapter 12, R. S. U. 1933.

The argument is that by the adoption of the Uniform Stock Transfer Law, the state relinquished its power and jurisdiction over shares of stock where neither the owner nor the certificate is within its borders, and so lost its power to tax the transfer or devolution. Counsel argue that since the Uniform Stock Transfer Act permits attachment or levy of execution on stock only by seizure of the certificate, the stock or interest of the stockholder in the corporation does not exist independent of the certifi-

cate. Therefore it can have no situs except the situs of the certificate. The certificate thus actually becomes the property, and not the evidence or proof of ownership thereof. Such is not the import of the Uniform Stock Transfer Act. It does not change the nature of stock ownership or stockholders' rights, as far as the state or the corporation is concerned. That Act relates solely to methods of transferring title to stock either by act of the owner, or by legal process. In the instant case there is no question of title involved; there is no dispute as to the ownership of the stock, and no problem involved as to how the stock must or can pass from the estate to the heirs or to the purchasers from the estate. The whole chapter deals with the rights and duties of the transferor and transferee of a stock certificate as against each other and against all other claimants, including creditors or persons who seek to obtain or reach the stock by legal process. It is simply a procedural statute dealing with the methods and processes of determining or obtaining title to the stock. Title in Untermyer being admitted, and the state neither asserting nor seeking title thereto, the chapter has no bearing. Although briefs on both sides are masterful and thorough, neither counsel has cited any authority on this question and our own research has failed to reveal any.

Corporate stock may have a situs or existence in different jurisdictions for different purposes. Thus the situs of such stock for purposes of taxation, distribution of decedents' estates, attachment, garnishment, and execution may vary. Corporate stock was not subject to attachment at common law. See annotation, 1 A. L. R. 653. Expressly recognizing the rule that the shares of stock are not subject to attachments unless expressly made so by statute are the following cases: *Rhea* v. *Powell,* 24 Ill. App. 77; *United States Exp. Co.* v. *Hurlock,* 120 Md. 107, 87 A. 834, Ann. Cas. 1915A, 566; *Foster* v. *Potter,* 37 Mo. 525; *Armour Bros. Banking Co.* v. *St. Louis National Bank,* 113 Mo. 12, 20 S. W. 690, 35 Am. St. Rep. 691; *Nashville Bank* v. *Ragsdale,*

*Peck,* Tenn., 296; *Merchants Mutual Insurance Company* v. *J. H. Brower & Co.,* 38 Tex. 230. Statutes were therefore enacted in most states making shares of stock subject to attachment garnishment and levy of execution. Some courts gave such statutes very broad and liberal constructions to allow attachment and levy of execution on corporate stock.

On the other hand in a number of cases, statutory provisions very similar were held not to authorize attachment or levy of execution on corporate stock. We shall not review the cases as many are collated and reviewed in the annotation in 1 A. L. R. 653ff. Since stocks were being bought and sold on the markets and exchanges without regard to state boundaries, and confusion resulted because there was no way in which the purchasers could determine what they were buying or have reasonable assurance as to the title they received, could not know whether the stock, had been attached or garnisheed by service on the corporation, or sold under execution, it was desirable if not absolutely necessary that some certainty and order be established or stocks could not be sold on the market. They needed the security of some negotiability. To effectuate this the Uniform Stock Transfer Law was formulated and adopted by many states, defining the rights acquired by a purchaser upon receipt of his certificate against other possible claimants of the stock, and prescribing a uniform definite way by which the stock can be reached by legal process at the behest of creditors or other claimants. The right to tax the stock directly against the owner or to tax its devolution upon death is not within nor affected by any provision of the Uniform Stock Transfer Law. It is only if the state should seek to obtain possession of or title to the stock that the Act could enter into the picture. No such attempt is made here. The argument must fail.

2. The due process clause of the state constitution is substantially the same as the Fifth and Fourteenth amendments to the Federal Constitution. Decisions of the Supreme

Court of the United States on the due process clauses of the Federal Constitution are "highly persuasive" as to the application of that clause of our state constitution. There are two grounds upon which such attack rests: That property was being taken without notice and an opportunity to be heard; and that the state was attempting to exercise some sort of extraterritorial jurisdiction. Both of these angles have been answered by what has been said above. The parties were given a hearing in the district court; the cause was reviewed here—then in the Supreme Court of the United States and now here again. There can be no question of want of notice and hearing. As to the other ground, the cases are numerous holding such tax does not violate due process clauses on territorial grounds. In addition to the cases cited earlier in this opinion we refer also to *State of Wisconsin* v. *J. C. Penney Co.*, 311 U. S. 435, 61 S. Ct. 246, 85 L. Ed. 267, 130 A. L. R. 1229; *Nelson* v. *Sears, Roebuck & Company*, 312 U. S. 359, 61 S. Ct. 586, 85 L. Ed. 888, 132 A. L. R. 475; *Nelson* v. *Montgomery Ward & Company*, 312 U. S. 373, 61 S. Ct. 593, 85 L. Ed. 897; *Jenkins* v. *Ballantyne*, 8 Utah 245, 30 P. 760, 16 L. R. A. 689; *Commonwealth* v. *Stewart*, 338 Pa. 9, 12 A. 2d 444. *Montgomery Ward & Co.* v. *State Tax Commission*, 100 Utah 222, 112 P. 2d 152. With respect to "due process" in succession taxes see *In re Speed's Estate*, 216 Ill. 23, 74 N. E. 809, 108 Am. St. Rep. 189, affirmed in *Board of Education* v. *State of Illinois*, 203 U. S. 553, 27 S. Ct. 171, 51 L. Ed. 314, 8 Ann. Cas. 157; *Cahen* v. *Brewster*, 203 U. S. 543, 27 S. Ct. 174, 51 L. Ed. 310, 8 Ann. Cas. 215, affirming *Succession of Levy*, 115 La. 377, 39 So. 37, 8 L. R. A., N. S., 1180, 5 Ann. Cas. 871; *Orr* v. *Gilman*, 183 U. S. 278, 22 S. Ct. 213, 46 L. Ed. 196; *Trippet* v. *State*, 149 Cal. 521, 86 P. 1084, 8 L. R. A., N. S., 1210; *Gelsthorpe* v. *Furnell*, 20 Mont. 299, 51 P. 267, 39 L. R. A. 170.

3. We also hold the tax does not violate the "uniformity clause" Section 24, Article I, of the state constitution. The significance of this clause is well expressed on pp. 818, 819 of Vol. 5 Calif. Jurisprudence where it states:

"The word 'uniform' in the section of the constitution under consideration does not mean universal. The provision intends simply that the effect of general laws shall be the same upon all persons who stand in the same relation to the law. It has been repeatedly held that a law is general which applies to all of a class—the classification being a proper one—and that the requirements of uniformity is satisfied if it applies to all of the class alike."

As applied to taxation statutes such constitutional provision requires only that the tax shall fall equally upon all similarly situated. Cooley on Taxation 4 Ed., Vol. 1, § 111; *State* v. *Mason,* 94 Utah 501, 78 P. 2d 920, 117 A. L. R. 330; *Shotwell* v. *Moore,* 45 Ohio St. 632, 16 N. E. 470, 471, affirmed 129 U. S. 590, 9 S. Ct. 362, 32 L. Ed. 827; *Knowlton* v. *Moore,* 178 U. S. 41, 20 S. Ct. 747, 44 L. Ed. 969.

Since the District Court entered judgment against the tax commission, holding the estate not subject to taxation, no computation or determination of the amount of tax was made below. The judgment is reversed, and the cause remanded to the District Court for further proceedings holding the estate subject to tax and the determination of the amount thereof.

Appellants to recover costs.

McDONOUGH, J., concurs.

MOFFAT, C. J., concurs in the result.

WOLFE, Justice (concurring).

I concur but I think our decisions in the cases of *Aldrich* v. *State Tax Commission* and *Untermyer* v. *State Tax Commission* contained in 116 P. 2d respectively at pages 923 and 926 already state our position as to the intended effect of 80-12-2 and 80-12-3, R. S. U. 1933, and their constitutionality under our own constitution. We, in effect, held that the only bar to the full sweep of those sections was the holding of the Supreme Court of the United States in the case of

*First National Bank* v. *Maine,* 284 U. S. 312, 52 S. Ct. 174, 176, 76 L. Ed. 313, 77 A. L. R. 1401, which case read into the Fourteenth Amendment of the Constitution of the United States a "rule of immunity from taxation by more than one state." When the Supreme Court in the recent case of *State Tax Commission* v. *Aldrich,* 102 Utah 226, 316 U. S. 174, 62 S. Ct. 1008, 1012, 86 L. Ed. . . ., overruled First National Bank v. Maine and held that "jurisdiction to tax" resides in the state wherein the corporation is domiciled, it removed the bar which prevented our former opinions from having the effect of permitting taxation. Having already held in effect that the legislature intended by the phrase "within the jurisdiction of this state" to include all property which it had jurisdiction to tax and the Supreme Court of the United States having held that this state had jurisdiction to tax the transfer by death of Union Pacific stock, it seems to me that the effect of our two decisions in 116 P. 2d and the majority opinion of the Supreme Court of the United States on certiorari automatically result in a decision holding that such shares are taxable under 80-12-2 and 80-12-3, R. S. U. 1933. I see little necessity in covering the ground that the Supreme Court of the United States has already gone over for us. For the reasons herein stated, I concur in the results of the opinion in the above case.

PRATT, J., on leave of absence.