LARSON, State Treasurer, v. MacMILLER et al.

No. 3439.    Decided April 9, 1920.    (189 Pac. 579.)

1. TAXATION—INHERITANCE TAXES NOT UPON PROPERTY BUT UPON SUCCESSION.  Inheritance taxes are not levied upon property, but upon the succession, and property not in itself taxable by the state may be used as a measure of the tax imposed.[1]

2. TAXATION—"INTEREST" IN INHERITANCE TAX LAW REFERS TO OWNERSHIP AND NOT LIEN UPON PROPERTY.  The words "any interest therein," as used in the inheritance tax law, particularly in Comp. Laws 1917, section 3194, refer to any interest in property having situs in Utah that must be the basis for estimating inheritance tax, nowhere does the law intimate that owner of incumbered property owns less than all of it, the word "interest" meaning proprietary interest, ownership of a life interest, with remainder in another, or a partnership interest, and not an equitable or other lien depending for ownership upon future failure to pay a debt.

3. TAXATION—MODE OF COMPUTING INHERITANCE TAX ON CORPORATE STOCK PLEDGED IN ANOTHER STATE FOR DEBT STATED;

Appeal from Third District

"DEBTS CHARGEABLE TO PROPERTY." In view of Comp. Laws, sections 3185, 3186, 3193, 3194, 3212, an inheritance tax should be measured by market value of property remaining after payment of debts and expenses "chargeable to the property," being taxes prior to decedent's death, funeral expenses, court costs, executors', administrators', and trustees' fees, and decedent's debts prior to death, so that, upon a transfer of corporate stock on the books of railway company in the state pledged in New York to secure a debt, the tax must be computed by multiplying the ratio which the market value of such stock bears to the total assets, by the total debts, and then making the proportionate deduction of debts for the Utah assets and administration expenses.

4. TAXATION—INHERITANCE TAX LAW DOES NOT DISCRIMINATE AGAINST NONRESIDENTS' ESTATES. Inheritance Tax Law, sections 3185, 3186, 3193, 3194, 3212, do not discriminate against estates of nonresidents, and do not give such estates any discriminatory advantage or special privilege over residents' estate.

5. TAXATION—RULE CONSTRUING TAX LAW MOST FAVORABLE TO TAXPAYER NOT APPLICABLE WHERE STATUTE NOT DOUBTFUL. The universally recognized rule that statutes imposing taxes are not to be given a liberal construction favorable to state, but in case of doubt they should be regarded favorably to taxpayers, has no application to the case of inheritance tax law, where its language is clear.

Appeal from District Court, Third District, Salt Lake County; *Wm. H. Bramel,* Judge.

Action by Daniel O. Larson, Treasurer of the State of Utah, against John W. MacMiller and another, as executors of estate of Harry S. Harkness, deceased. Judgment for plaintiff for part of sum claimed, and plaintiff appeals.

REVERSED, WITH DIRECTIONS.

*Dan B. Shields,* Atty. Gen., and *James H. Wolfe, O. C. Dalby,* and *H. Van Dam, Jr.,* Asst. Attys. Gen., for appellant.

*Williams & Williams,* of Salt Lake City, for respondents.

WEBER, J.

Harry S. Harkness, a resident of New York City, died there January 23, 1919. According to the complaint herein a portion of the personal property of the deceased consisted of 2,000 shares of common stock of the Union Pacific Railroad Company, a Utah corporation, the market value of which on the date of decedent's death was $254,250. It is to collect the amount plaintiff claims to be due to the state of Utah as an inheritance tax on this stock that this action was brought.

The defendants, who are the executors of the estate of said Harkness, have answered, and denied that the deceased owned stock in th Union Pacific Railroad Company of the market value of $254,250, or that he had any interest in any such stock at that time in any value in excess of $121,722.66; but it is admitted that the deceased at the time of his death was the owner of an equity of redemption in 2,000 shares of the common stock of the Union Pacific Railroad Company, the said deceased in his lifetime having pledged the 2,000 shares of stock, being all the shares of stock in the Union Pacific Railroad in which the deceased at the time of his death had any interest, to Jessup & Lamont, copartners resident and doing business in the state and city of New York. It is further admitted in the answer that there is due the state of Utah, as an inheritance tax upon the interest owned in such stock by deceased at the time of his death, the sum of $3,366.36 and no more. Defendants offered to submit to entry of judgment against the estate of said Harkness for the last-named sum.

The facts necessary to reach a decision in this case were mutually agreed upon in a stipulation of facts. These facts are incorporated in the court's findings as follows:

"(1) That the total amount of the estate of said Harry S. Harkness, deceased, at the time of his death, was $15,111,106.40.

"(2) That the total indebtedness of the said deceased at the time of his death, including the amount owing Jessup & Lamont, was $4,740,169.40.

"(3) That at the date of his death the said deceased was indebted to the firm of Jessup & Lamont, of New York City, in the sum of $2,051,835.93, which is a part of the indebtedness of said

estate, and that to secure the said indebtedness the said deceased in his lifetime had pledged to the said Jessup & Lamont securities amounting in value at the time of his death to the sum of $3,936,-087.62, which securities were a part of the assets of said estate at the time of decedent's death.

"(4)    That amongst the securities so pledged were 2,000 shares of the common stock of the Union Pacific Railroad Company, being all of the shares of the said company in which the deceased at the time of his death had any interest or estate, and that said Union Pacific stock was by the terms of said pledge subject to sale upon default of payment for the discharge of said indebtedness; that such default had not occurred and said stock was not sold at the time of decedent's death;· that the said stock at the date of the death of said decedent was of the market value of $254,250; and that the excess value of said stock, over and above the indebtedness secured by it, was $121,722.66."

From the above facts the court found as conclusions of law:

"That the defendants are liable for the inheritance tax provided by the Laws of Utah upon the sum of $121,722.66 only, that being the value of the interest owned by the deceased at the date of his death in the said 2,000 shares of the common stock of the Union Pacific Railroad Company.

"That said sum is subject to the deductions provided by the Inheritance Tax Law, to wit, $10,000 provided by section 3185 of the Compiled Laws of Utah 1917, and the further sum of $38,395.37 authorized by the provisions of section 3212 of said Compiled Laws, leaving a balance upon which the said tax is to be computed of $73,327.29; and that the tax, under the Statutes of Utah, upon said sums amounts to $3,366.36.

"That the said plaintiff is entitled to judgment against the said defendants for the said sum of $3,366.36 and costs to be taxed."

From the judgment in accordance with the conclusions of law plaintiff appeals.

The following succinct statement of the issues in this case is taken from respondent's brief:

"The one difference, then, between the parties to this action is as to the application of the provisions of the Inheritance Tax Law of the state of Utah to the facts existing in this case as they have been agreed upon by and between the parties.

"The position taken by the State Treasurer is that under that law the estate of Harry S. Harkness should pay an inheritance tax upon the full market value (after deducting the proportion of debts as provided in section 3212, C. L. of Utah 1917) of the 2,000 shares of Union Pacific Railroad Company stock, free from all incumbrances,

and regardless of the fact that at the time of the decedent's death it was subject to a pledge to secure certain indebtedness contracted by said deceased in his lifetime; the excess value of said stock over and above the indebtedness secured by it being, according to the stipulation, $121,722.66.

"The position of the defendants and respondents, executors of the estate of Harry S. Harkness, is that the estate is subject to pay an inheritance tax to the state of Utah only upon the amount or value of the said stock over and above the amount of the indebtedness for which it was given as security (after deducting the proportion of debts as provided in the said section 3212, C. L. of Utah 1917), which amount is, according to the respondents, the value of the interest owned by Harkness at his death in and to all the property owned by him and subject to inheritance taxation in Utah."

When considering the subject of inheritance taxes, it is necessary to keep in mind that such taxes are not levied upon property, but are taxes upon the succession (*Dixon* v. *Ricketts*, 26 Utah 215, 72 Pac. 947), and that, in order to obtain a basis for the succession or inheritance tax, property not in itself taxable by the state may be used as a measure of the tax imposed (*Maxwell et al.* v. *Bugbee*, 250 U. S. 525, 40 Sup. Ct. 2, 63 L. Ed. 1124).

One of the questions in this case is whether Harkness owned all this stock at the time of his death or only part of it. It is conceded that ownership was in Harkness, but it is insisted that the brokers, because of their possession as pledgees, had an "interest" in the stock and owned part of it. Their "interest" certainly was not in Utah, and it is the property that has its situs in Utah that must be taken as the basis for estimating the transfer or inheritance tax. All of the stock is here on the books of the Union Pacific Railroad Company. All of it was in the name of Harkness at the time of his death—he owned it all. If Harkness did not own it within the purview of the inheritance tax law, who did? If one of the firm of Jessup & Lamont, the brokers, had died, leaving a one-half interest in a note for which this stock had been hypothecated as collateral, would his interest in a debt for which the stock was security be subject to the payment of an inheritance tax in Utah? Why not, if he in fact owned an interest in the stock? But owning no interest in the stock,

Appeal from Third District

in the sense that the word "interest" is used in the inherit-
ance tax law; having no share in it—no proprietary right—
there would be no transfer or inheritance tax to pay on the
stock because the situs of the debt is not in Utah, and the
value of the stock could not be used as a basis for a transfer
tax because the broker had no proprietary interest, no part
ownership, in the stock within the purview of the inheritance
tax law. No one would say that the broker's estate could be
charged with an inheritance tax under the laws of Utah
because of the contingent interest he had in the stock as          2
a pledgee in New York. The broker's estate not actu-
ally owning any part of the stock, it follows that, for the
purpose of obtaining a basis for the transfer or inheritance
tax, Harkness owned it all, and hence the contingent interest
of the broker would not require the payment of a transfer
tax on the stock. When the statute uses the words "all prop-
erty or any interest therein," the words "any interest there-
in" are not meaningless. They are inserted in the statute
for a purpose, and that purpose is at least partially mani-
fested in Comp. Laws Utah 1917, section 3194, where it is said:

"Whenever any real estate of a decedent shall be subject to such
tax, and there be a life estate or interest for a term of years given
to one party or parties, and the remainder to another party or par-
ties, the court shall direct the interest of the life estate, or term of
years, to be appraised at its market value in the ordinary course of
trade, and, upon the approval of such appraisement by the court,
the party entitled to such life estate, or term of years, shall, within
sixty days thereafter, pay such tax, and in default thereof the court
shall order such interest in said estate, or so much thereof as shall
be necessary to pay such tax, to be sold. * * * Whenever any
personal estate of a decedent shall be subject to such tax and there
be a life estate or interest for a term of years given to one party
or parties, and the remainder to another party or parties, the court
shall inquire into and determine the market value in the ordinary
course of trade of the life estate or interest for the term of years,
and order and direct the amount of the tax thereon to be paid by
the prior estate and that to be paid by the remainderman, each of
whom shall pay his proportion of the tax within sixty days from
such determination. * * *"

Nowhere in the inheritance tax law is there any intimation
that the owner of incumbered property owns less than all of

it; that he is the holder of an interest only or owns less than the whole in case the property is subject to a debt or a lien. All through the act are indices pointing to the conception that it was intended by the word "interest" to convey the idea of a distinct part of the property, a proprietary interest, ownership of a life interest in the one party and the remainder in another, a certain interest with another, as the interest of one partner in the property owned by a partnership—not an equitable or other lien depending for the possibility of ownership upon the future failure to pay a debt.

Section 3212 of the Inheritance Tax Law is as follows:

"Where any property belonging to a foreign estate is subject to the payment of an inheritance tax in this state, such tax shall be assessed upon the market value of such property remaining after the payment of such debts and expenses as are chargeable to the property under the laws of this state, and in the event that the executor, administrator, or trustee of such foreign estate files with the clerk of the court having ancillary jurisdiction, statements in writing exhibiting the true market value of the entire estate of the decedent owner, and the indebtedness for which the said estate has been adjudged liable, which statements shall be in affidavit form and sworn to by such executor, administrator, or trustee, the beneficiaries of said estate shall then be entitled to have deducted such proportion of the said indebtedness of the decedent from the value of the property within this state as the value of the property within this state bears to the value of the entire estate; provided, that in all such cases where the property within this state consists of personal property only, the statements hereinbefore provided for shall be filed with the attorney-general."

The tax is to be measured by the market value of such property remaining after the payment of such debts and expenses "as are chargeable to the property," and the debts chargeable to the property are those chargeable "under the laws of this state." And what are the debts chargeable to the property under the inheritance tax law of this state? The answer is contained in section 3186 of the Inheritance Tax Law, which reads:

"The term 'debts,' as used in this chapter, shall include, in addition to debts owing by decedent at the time of his death, the local or state taxes due from the estate prior to his death, a reasonable sum for funeral expenses, the court costs, the statutory fees of executors, administrators, or trustees, and no other sum. * * *"

It is further provided that in case of foreign estates, where the property within this state consists of personal property only, the debts shall not be deducted unless the same are approved and allowed by the Attorney General. The money due on the U. P. stock from Harkness to the brokers was a debt owing by defendant—one of the debts chargeable to the property "under the laws of this state"—and, in order to be deducted, must be presented in the manner provided by section 3212, supra; and when sworn statements in writing, in affidavit form, have been presented to the Attorney General by the executor or administrator, exhibiting the true market value of the entire estate, and the indebtedness for which said estate has been adjudged liable, then, and not until then, shall the beneficiaries of the estate be entitled to have deducted such proportion of the said indebtedness of the decedent from the value of the property within this state as the value of the property within this state bears to the value of the entire estate. The statement required is that of "the true market value of the entire estate," and, when that is followed in the law with the requirement of a statement of the indebtedness for which the estate has been adjudged liable, all of the debts are thereby included. If all the debts of an estate are thus required to be 'presented by the inheritance tax law, the very debt for which this stock has been pledged has been deducted in this sworn statement. The legislative intent, as plainly expressed in the inheritance tax law, is clearly to the effect that the basis for estimating the inheritance or transfer tax of a foreign estate is not the market value of what in this case has been designated as an "equity," but the market value of decedent's stock regardless of any incumbrance or lien thereon—the market value of all the stock, not of the stock less the incumbrance or lien. This basis is fair and equitable, and does not discriminate against the estates of nonresidents, neither does it give to nonresidents any discriminatory advantage or special privilege. If Mr. Harkness had been a citizen of Utah at the time of his death, owning this stock incumbered as it was, all of his estate would have been appraised, his debts deducted, and the remainder

would have been net estate. Comp. Laws Utah 1917, section 3185. There would have been no appraisement of a so-called equity in the stock; with other property, it would have been appraised at the market value, and from the total assets the total indebtedness of the estate would have been deducted in accordance with section 3193, Comp. Laws Utah 1917, which provides that the property of a resident decedent shall be appraised "at its market value in the ordinary course of trade, and the tax thereon, calculated upon the appraised market value after deducting debts for which the estate is liable." In our opinion, it is the purpose of the statute to apply to foreign estates that have property in this state the same rules of computation for ascertaining the basis for the transfer or inheritance tax that apply to domestic estates, except that in order to reach a fair and equitable result the net value of the foreign estate in this state is ascertained by the methods provided by section 3212, supra.

The total assets of the Harkness estate are valued at $15,111,106.40. The assets in Utah, amounting to $254,250, bear to this total a ratio represented by the decimal .0168, and this factor multiplied by the total debts, amounting to $4,740,167.40, equals $78,634.85, the proportionate deduction of debts from Utah assets. In addition there should be deducted $2,692.50 as executor's commissions, or a total deduction of $82,327.34, leaving $171,922.66 as the assets in Utah on which the tax is to be figured. When computed according to Comp. Laws Utah 1917, section 3185, the tax owing will be found to be $7,796.13.

The statutes of the various states relating to inheritance taxes are so divergent that we have not found adjudicated cases very helpful in arriving at a conclusion in this case. We have carefully examined the authorities cited by respondents, and while the cases relied upon by them seem, when cursorily read, to fully sustain their position, an examination of the statutes of New Jersey and Massachusetts demonstrates that cases from those states are of doubtful value when applied to the inheritance tax law of this state and the questions here

at issue.   Cases cited by respondents are:   *Security T. Co.* v. *Edwards* (N. J.) 101 Atl. 384, L. R. A. 1917F, 273, and note p. 278; *McCurdy* v. *McCurdy*, 197 Mass. 248, 83 N. E. 881, 16 L. R. A. (N. S.) 329, 14 Ann. Cas. 859.   Other cases are cited by respondents, but their applicability to any phase of the instant case is far-fetched.

Counsel call attention to the universally recognized rule that statutes imposing taxes are not to be given a liberal construction in favor of the state, but, on the contrary, if there is any doubt as to the exact scope or meaning of such act every intendment is to be regarded as favorable to the taxpayer as against the government.   No member of this court has any doubt that the clear import of the language of the inheritance tax law is that stock in this state belonging to a foreign estate must be appraised at its market value regardless of any liens or incumbrances thereon, but all are firmly of the opinion that, when all of its various provisions are taken into consideration, the inheritance tax statute of this state cannot logically be given a construction that would lead to a result different than that at which we have arrived.

The judgment is reversed, with costs to appellant.   As appellant in his complaint did not correctly state the amount of the tax due, the district court is directed to permit him to allege and demand the proper amount by amendment of the complaint, if he so desires, and that conclusions of law and judgment be entered in harmony with the views herein expressed.

CORFMAN, C. J., and FRICK, GIDEON, and THURMAN, JJ., concur.