LOCAL REALTY CO. v. STEELE et al.

No. 5671. Decided December 1, 1936. (62 P. [2d] 558.)

*Stephens, Brayton & Lowe* and *Calvin Behle,* all of Salt Lake City, for appellant.

*Bagley, Judd & Ray* and *F. A. Trottier,* all of Salt Lake City, for respondents.

WOLFE, Justice.

The appellant, Local Realty Company, brought this action to foreclose a mortgage on realty, joining the Industrial Commission which had a judgment against Steele & Co. for premiums for compensation insurance carried by the commission. The only facts necessary to understand the questions involved are: That J. R. Steele and B. W. Steele, his wife, in October of 1930 mortgaged the piece of real estate, on which it now is sought to foreclose the said mortgage, to the Tracy Loan & Trust Company. This company trans-

ferred the mortgage in November, 1933, to the plaintiff, Local Realty Company. In the meantime, in May, 1932, the Steeles, mortgagors, conveyed the said real estate to Steele & Co., Inc., who took subject to the mortgage but did not assume the debt. On August 31, 1933, long after the mortgage was made, the Industrial Commission obtained a judgment against Steele & Co., Inc., for the insurance premium. In the suit to foreclose, the Industrial Commission claimed its judgment should be considered as a prior lien to the mortgage even though the mortgage was placed on the property and on record nearly three years before its judgment was obtained and even though at said time the mortgage was in the hands of the original mortgagee. The commission makes this claim by virtue of section 42-1-59, R. S. Utah 1933 (same as section 3135, Comp. Laws Utah 1917, except for the words "now have" following the last word "taxes"), reading as follows:

"All judgments obtained in any action prosecuted by the commission or by the state under the authority of this title shall have the same preference against the assets of the employer as claims for taxes."

The lower court concluded that the commission's judgment must be paid out of the proceeds of the sale of the real estate before the mortgage holder could have recourse to them. Plaintiff appeals from this decreed order of payment, claiming that its mortgage note should first be paid from such proceeds. Appellant contends: (1) that the "asset" of Steele & Co., as meant by this section, was the value of the real estate less what was due on the mortgage and not the value of the real estate clear. (2) That a judgment meeting the requirements of that section is only given a preference equal to the preference of tax claims in the distribution of assets and not given the same status as a tax lien. (3) That if it is construed as giving the judgment the same status as a tax lien, it is unconstitutional because (a) special legislation discriminatory in character, and (b) not due process of law.

We shall first take up question (2) above which involves a construction of the statute. Respondent contends that we must treat the commission judgment as if it occupied the position of a tax lien in determining the order of payment out of any piece of real estate sold on foreclosure. That is the logical outcome of a contention that the statute meant to give the commission the status of a tax lien claimant rather than lay down a mere order of preference of payment, because the judgment already stands as a lien against all the debtor's real estate in the county where it is recorded and as such lien would have preference over unsecured claims and all liens which were subsequent in time.

The proposition immediately provokes a collateral series of interesting questions concerning selection of property against which the lien should be asserted if there are mortgaged and unmortgaged properties and whether the mortgagees could force or require a selection in equity in order to preserve their liens. The respondent would logically answer that if the judgment creditor has a prior lien on all real estate, he may take all of it out of any part or all, as to which it might be commented that it was unfortunate for this mortgagee that it could not wait to foreclose its mortgage in the hopes that the commission would find some other piece of property out of which to satisfy the judgment lien before the mortgagee was forced to start foreclosure proceedings. What really happens, if the respondent's contention is correct, is that the mortgagee by bringing the foreclosure action and in order to join all lienholders, simply "awakens a sleeping dog."

Unless there is ample equity in the mortgaged property, a foreclosure by the mortgagee would produce no beneficial result to itself, but would produce the very favorable situation for which this alleged special judgment creditor might earnestly hope, to wit, just the opportunity to defend affirmatively and obtain a decree giving it first recourse to the proceeds of the sale. That is not a reason for holding the contention of the respondent unsound,

but a consequence which would follow if it were sound. But where consequences involving oddities or unfairness or fortuitous benefits follow from one construction and can be avoided by another at least equally as tenable, the consequence should be taken into account. Appellant also points out that a conventional lien would be subject to uncertainty and to circumstances against which the mortgagee could not anticipate, in that, wholly without fault of the latter and without power of control, the mortgaged property through conveyances by the mortgagor might go through the hands of a person or corporation who might suffer or had suffered a judgment to be had against him or it in favor of the commission, as in the instant case, and thus collect a lien during mere passage of title which would displace a mortgage which had previously attached.

Reverting to the actual language of section 42-1-59, it says, "Judgments [of the nature specified] shall have the same preference * * * as *claims* for taxes [now have]." (Italics supplied.) It does not say the same lien status. Counsel for the respondent answer that the judgment ■ docketed being already a lien against all real estate, makes the statute meaningless unless we construe it as intending to give the same priority as a tax lien. But this is not true. The section could have a distinct office aside from fixing priority as to liens, in that it provides for preference in the distribution of estates whether insolvent or otherwise. Where all is personal property, that is, nothing to which an ordinary judgment lien can attach, the section directs that this judgment be paid pari passu with taxes. In all cases where a *claim* for taxes takes precedence, there also will a judgment of this nature take equal precedence.

To the contention of respondent that there would be no object in giving a commission judgment a preference right only in assets when even without section 42-1-59 it would be a lien against real estate in the county where docketed and thus would have the preference which a judgment lien would give it, appellant replies that a preference claim may

be asserted anywhere where assets are in the process of distribution or administration, whereas the preference which arises by reason of a judgment lien comes only in that county where the real estate is located and the judgment docketed and then only against real estate. See section 104-30-15, R. S. 1933. Thus appellant argues that there was this objective to section 42-1-59 as well as that of giving the commission judgment the preference a tax claim would have against personal property.

A close scrutiny of appellant's and respondent's respective contentions reveals with increasing clarity as the true implications from them are understood that the difference comes in the aspect with which section 42-1-59 is viewed. Respondent and the court below read it as if it controlled the preference by which a commission judgment would be satisfied out of a particular asset. Thus, if a certain piece of real estate were in litigation by foreclosure of a mortgage, the court would have to determine, in such action, the order of preference in satisfying the commission judgment and the mortgage debt out of this particular piece of real estate on which the mortgagee resided. Appellant, on the other hand, reads the section as applying to "assets of the employer" as collective or in their entirety. We believe the latter construction correct. The section does not say, "shall have the same preference against any 'asset' of the employer" or "against any piece of real estate of the employer." It uses the word "assets." Nor does it say, "shall have the same preference against the assets of the employer as a 'tax' or 'as a lien for taxes,' " but "as claims for taxes." In other words, the section contemplated a preference against the judgment debtor's "assets" as collectively used in their entirety considered as an estate for payment of claims or for distribution. "Claims for taxes" means a claim against the total assets. Thus, the phrase should be read as saying, "shall have the same preference against the assets of the employer as a claim for taxes has against the assets of the employer." Now a "claim for taxes" in this sense

only occurs when assets are considered in their entirety as an estate for liquidation of debts or for distribution. While there is a claim for taxes because of taxes owing, the claim against a single piece of realty would be asserted in the form of a lien and the preference against such single asset would grow out of this lien right. But when all assets subject to claims or distribution are considered in their aspect as a whole subject to debts or as an estate subject to distribution, the tribunal or party charged with administering these assets in liquidation of debts or for distribution among creditors or beneficiaries must consider the preference of claims in respect to the "assets" in entirety treated as a fund. He must give taxes a preference out of this fund. In probate, he must pay these taxes "out of the funds of the estate." Debts secured by real property which is a homestead must be paid after employees' wages and debts having preference by the laws of the United States or this state. And next after that, debts secured by liens on the property of the decedent at the time of his death. See sections 102-9-22 and 102-9-23, R. S. 1933. The reason was to free these encumbered assets of their clinging debts. Naturally, they would also have to be freed from tax liens. Thus, in the aspect of the "assets" of the decedent, looked at in its entirety as an estate, certain claims were preferred. This was an order of priority. And in any case where there are "assets" viewed in the aspect of an estate for distribution among creditors or legatees or heirs, or assembled or marshaled by a receiver, conservator, trustee, or assignee for creditors, there is a preference of one sort of claim over another. In such a case, section 42-1-59 applies. But it was never meant to be applied so that the commission as a judgment creditor could intervene in any foreclosure of a lien and put itself ahead of the luckless lienholder who had the misfortune to foreclose. It could not say: "Pay me first out of this property as you would a tax lien even though it create a deficiency for the lien holder and force

him to collect as a general creditor against remaining assets."

Even if the "assets" are a single piece of real estate, the situation is the same. If the real estate is subject to foreclosure, the commission judgment takes its place in the sharing of the proceeds of sale according to its priority of lien as in the case of any other judgment. If, however, the real estate is being handled as an estate for liquidation of claims, then the commission judgment gets the same preference as a tax claim put in as a claim. The tax may also be a lien and such lien takes precedence over a mortgage lien, but that is a preference by virtue of the lien and not by virtue of the tax treated as a claim against the estate. The test is to determine in the administration of assets what preference the tax claim takes in the order of payment as provided by law as applied to such estates and when that is once determined to give the commission judgment the same preference.

In view of the hardships arising from situations mentioned in this opinion, we are disinclined to widen the construction of the terms. We will not give the term "assets" the meaning as if it read "each individual asset" and thus read the phrase as if it read, "shall have the same preference against 'each single asset' of the employer as a claim for taxes 'has against such asset.' " From what has been said, it is unnecessary to consider questions (1) and (3) posed at the beginning of this opinion.

We have not placed our decision on the ground contended for by appellant that the "asset" of Steele & Co., as meant by the section herein construed, should be construed as the value of the real estate clear of the mortgage, because (a) the statute does not read, "any asset," but reads, "assets"; (b) even in accounting, a mortgaged property is most generally placed on the asset side of a statement of assets and liabilities at its full value and the mortgage debt on the liability side. If the property is taken subject to the mortgage, but without assuming liability for the debt, we believe

good accounting practice would condone putting the full value of the real estate on the asset side and the *contingent liability against the real estate* on the other; (c) we think such conception contrary to that contained in *Larson v. MacMiller*, 56 Utah 84, 189 P. 579, 581, wherein it is said:

"Nowhere in the inheritance tax law is there any intimation that the owner of incumbered property owns less than all of it; that he is the holder of an interest only or owns less than the whole in case the property is subject to a debt or a lien. All through the act are indices pointing to the conception that it was intended by the word 'interest' to convey the idea of a distinct part of the property, a proprietary interest, ownership of a life interest in the one party and the remainder in another, a certain interest with another, as the interest of one partner in the property owned by a partnership—not an equitable or other lien depending for the possibility of ownership upon the future failure to pay a debt."

The fact that one statute said "property" and the other "assets" would not seem to change the principle that a debt is still a debt whether bargaining has made it recoverable first out of a specific piece of property if not paid or whether just an unsecured debt. The debt affects only the liabilities side and not the assets side of the ledger. (d) The statute (R. S. 1933, 42-1-59) must be read to make complete sense. "All judgments obtained in any action prosecuted by the commission or by the state under the authority of this title shall have the same preference against the assets of the employer as claims for taxes" *have against the assets*. The italicized portion completes the sense. If assets is read to mean the clear value, it must, of course, be read throughout the section with that meaning. This would, therefore, lead to construing the phrase "as claims for taxes [have against the assets]" as meaning claims for taxes have against the clear assets, which, of course, makes nonsense, since no one would maintain that there is any room for ever contending that the law even contemplated preference for a claim for taxes or any claim for taxes only against the clear assets.

The judgment of the court below giving the commission judgment a priority in the proceeds of the sale of the mortgaged property is reversed and the order is that ▮ the commission judgment be given only such position with respect to the proceeds of sale as it would have if it were an ordinary judgment. Costs to appellant.

FOLLAND and EPHRAIM HANSON, JJ., concur.

ELIAS HANSEN, Chief Justice.

I concur. Stated chronologically, the material facts which form the basis of this controversy are these: In October, 1930, J. R. Steele and B. W. Steele, his wife, executed a real estate mortgage in favor of the Tracy Loan & Trust Company. The mortgage was properly recorded soon after its execution. In May, 1932, the Steeles, mortgagors, conveyed the mortgaged premises to Steele & Co., Inc., which corporation took title to the property subject to the mortgage, but did not agree to pay the same. In August, 1933, the Industrial Commission of Utah obtained a judgment against Steele & Co., Inc., for an insurance premium. November, 1933, Tracy Loan & Trust Company transferred to the Local Realty Company, plaintiff herein, the mortgage, together with the note secured thereby. Plaintiff brought this action to foreclose its mortgage. The Industrial Commission of Utah was, because of its judgment, made a party defendant in the mortgage foreclosure suit. In that suit plaintiff claimed that the lien created by its mortgage is superior to the lien created by the judgment in favor of the Industrial Commission. On the other hand, the Industrial Commission claims that its judgment lien is superior to plaintiff's mortgage lien. That is the sole question which divides the parties to this controversy. The Industrial Commission relies upon the provisions of R. S. Utah 1933, 42-1-59, to support its claim. The provision so relied upon was in effect at the time the mortgage in question was executed. It reads thus:

"All judgments obtained in any action prosecuted by the commission or by the state under the authority of this title shall have the same preference against the assets of the employer as claims for taxes."

In its brief the Industrial Commission stresses the facts that its judgment was secured before the mortgage was transferred to the plaintiff by the Tracy Loan & Trust Company. I am unable to perceive how that fact can affect the results which should be reached in this case. All of the rights which the Tracy Loan & Trust Company had in or to the property in question were transferred to the Local Realty Company. If the mortgage lien, in the hands of the Tracy Loan & Trust Company, was superior to the judgment lien of the commission, such mortgage lien remained superior after the transfer was made; that is to say, the relative standing of the liens was not affected by the transfer.

That a mortgage creates in a mortgagee a property right with respect to the mortgaged property, within the meaning of our Federal and State Constitutions, is not open to doubt. That such right, regardless of the name applied to it, is entitled to the same degree of protection as is any other right touching the mortgaged property is equally clear. If we accept the doctrine contended for by the Industrial Commission, the holder of a mortgage on real estate may have such right rendered valueless if, perchance, the mortgagor conveys the property to an employer who, being subject to the Workmen's Compensation Act (Rev. St. 1933, 42-1-1 et seq.), fails to pay the premium on a policy of insurance with the state insurance fund. It is suggested that the mortgagee still has an action on the obligation to which the mortgage is a mere incident. It is reasonable to assume that such an action by the holder of the mortgage in the instant case is an empty right, otherwise the parties would not be here insisting upon the superiority of their respective liens. If I am wrong in so assuming, still, under the doctrine contended for by the Industrial Commission, other mortgagees may find themselves deprived of any and all means of realizing anything on obligations owing to them, notwithstanding the debts when contracted were amply secured. It is urged

that the original mortgagee, Tracy Loan & Trust Company, knew or was charged with knowing that such a result might follow when they accepted the mortgage because the law brought in question was in effect at that time. It is further urged the same results would follow if taxes levied against the mortgaged property are not paid. The nature of the lien created by unpaid taxes on real estate is so unlike the judgment lien here brought in question as not to admit of comparison. One who accepts a mortgage on real estate knows with certainty that taxes will be levied from year to year against the mortgaged property. He has some notion of the probable amount of taxes that will be so levied. The mortgagee derives the same kind of benefit from taxes levied for governmental purposes that are derived by the mortgagor. If special assessments are levied for improvements, such as streets, sidewalks, drainage, sewerage, etc., such assessments are calculated to enhance the value of the mortgaged property to the extent of the improvements made, and hence the security of the mortgagee is not destroyed. On the other hand, a mortgagee of real estate cannot reasonably anticipate that the mortgagor or his grantee will, without paying the premium, take out an industrial insurance policy with the state insurance fund, fail to pay such premium, suffer a judgment to be entered therefor, resulting in a lessening or destruction of the value of a valid subsisting mortgage. The obligation to pay the premium which forms the basis of the judgment lien here in controversy is in no sense an obligation of the plaintiff mortgagee. Nor may it be said that the mortgaged property derives any benefit from the payment of premiums to the state insurance fund. In its final analysis, a construction placed upon the statutory provision under review such as that urged by the Industrial Commission will permit the taking of mortgaged property to pay an obligation of the grantee of the mortgagor. Even though it may be said that a statute which has for its purpose the accomplishment of such a result is permissible within constitutional limitations, which I seri-

ously doubt, still it is difficult to perceive the lawmaking power intended that result. A construction of the statute which renders it oppressive or against principles of natural justice, or its constitutionality doubtful, should be avoided if the statute may reasonably be construed so as to escape such results. To deprive a mortgagee of its security because perchance a mortgagor transfers his interest to an employer subject to the industrial act, who fails to pay a premium on his insurance policy with the state insurance fund is, to say the least, both oppressive and against the principles of natural justice. Nor is the risk of being oppressed and unfairly dealt with under a statute, construed as the Industrial Commission would have us construe the statute under review, confined to a mortgagee. The burden of paying the judgment lien may fall upon the mortgagor or one claiming under him who has assumed and agreed to pay the debt secured by the mortgage, as well as all others who are liable for the payment of the debt. They are so burdened notwithstanding the amount of the mortgage may have been deducted from the sale price of the mortgaged property whenever a deficiency judgment is occasioned by applying proceeds derived from the sale of the property to the payment of the judgment lien. Before the courts conclude that the law-making power intended such results, the language used by it should clearly so indicate.

It will be observed that the statutory provision under review is by its express language intended to affect only the *assets* of the employer. The construction of the statute urged by the commission would extend the judgment lien to a preference not only against the assets of the employer, but against property standing in his name even though, because of the mortgage, it is not an asset to him. It permits the taking of a property right of a mortgagee to pay an obligation even though he owes no duty to pay the same. A mortgage is clearly an asset of the mortgagee when the obligation which it secures is otherwise valueless. One who

acquires property subject to a valid, subsisting mortgage for as much or more than its value does not thereby acquire anything of value unless those obligated to pay the debt are either able and willing or can be compelled to pay the same. To regard as of controlling importance the distinction between the rights of a mortgagee who has, by virtue of his mortgage, a lien upon property and the rights of a mortgagee who, by virtue of his mortgage, owns the title to the property subject to the right of the mortgagor to redeem the same is to magnify the shadow and ignore the substance. The mortgagee has no occasion to be especially concerned with who owns the legal title to the mortgaged property. His chief concern is to be able to resort to his security in the event the obligation is not paid. Property, whether mortgaged or not, is an asset to the extent of and not beyond its value. Real estate worth $1,000 subject to a mortgage for $1,000 may not well be said to be an asset of the mortgagor to the extent of $1,000 and at the same time an asset of the mortgagee to the extent of $1,000. Assets, that is, values, are not so created. Had the defendant Steele & Co., Inc., rendered a financial statement after it acquired title to the mortgaged property, it could truthfully say that the debt secured by the mortgage was not one of its liabilities because it never agreed to pay the same, but it could not truthfully claim as an asset the full value of the mortgaged property if those liable for the payment of the debt secured by the mortgage were unable to pay the same. If the Legislature intended to make such judgment liens as that here in question superior to prior mortgages on the judgment debtor's property, it would have been a simple matter to have expressly so provided. I am unable to agree that the language under review shows any such intention.

I concur in the view that the judgment should be reversed and the court below directed to recast its conclusions of law and decree to the end that the proceeds derived from the sale of the mortgaged property should be first applied to the

satisfaction of plaintiff's mortgage, and that appellant should be awarded its costs on appeal.

MOFFAT, Justice.

I concur in the results arrived at in both the prevailing and concurring opinions.